# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
| In re: | ) | |
| MATTHEW JASON MENNONA, and | ) | Case No. 21-11967 TBM |
| NICOLE MARIE MENNONA, | ) | Chapter 7 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| PATRICK S. LAYNG, | ) | |
| United States Trustee, Region 19, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 22-_____ - TBM |
| | ) | |
| DEVON MICHAEL BARCLAY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEVON BARCLAY, P.C. | ) | |
| Defendants. | ) | |

## UNITED STATES TRUSTEE'S COMPLAINT AGAINST
## DEVON MICHAEL BARCLAY AND DEVON BARCLAY, P.C.

Patrick S. Layng, United States Trustee for Region 19 (the "UST"), by and through his undersigned counsel, files this complaint against Devon Michael Barclay and Devon Barclay, P.C. (collectively, "Barclay"), pursuant to 11 U.S.C. §§ 105, 526-528, Federal Rule of Bankruptcy Procedure 9011, and Local Bankruptcy Rule 9010-1, requesting the Court enter a judgment and order: (1) voiding any contract for bankruptcy services between Barclay and Matthew Jason Mennona and Nicole Marie Mennona (the "Debtors"); (2) imposing sanctions, fines, and penalties; (3) entering injunctive relief to prevent future violations of Section 526; (4) prohibiting Barclay from engaging in the practice of law before the United States Bankruptcy Court for the District of Colorado; and (5) if the Court deems appropriate, referring this matter to the Disciplinary Panel or Committee on Conduct of the United States District Court for the District of Colorado pursuant to L.B.R. 9010-1(d).[1] In further support thereof, the United States Trustee states and alleges as follows:

## I. INTRODUCTION

"The bankruptcy system functions on the premise that the overwhelming majority of those who utilize it are honest, that those who are dishonest are not likely to be caught, and that the penalties for dishonesty are severe." *In re Stewart*, 970 F.3d 1255, 1265 (10th Cir. 2020) (quoting *In re Lewis*, 309 B.R. 597, 602-09 (Bankr. N.D. Okla. 2004)). These principles certainly apply

---

[1] All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*. Unless otherwise indicated, all references to a "§" or "Section" are to a section of the Bankruptcy Code, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

with no less (and likely more) vigor to the attorneys representing debtors within the bankruptcy system, as they do to debtors themselves.

A series of serious offenses pervade throughout Barclay's representation of the Debtors in a recent bankruptcy case. Those issues include, but are not limited to, Barclay's failure to obtain the Debtors' signatures on sworn statements filed with the Court, Barclay's failure to communicate with the Debtors (in general, and in regard to important requirements of the Bankruptcy Code and specific orders from the Court), allowing the Debtors to be sanctioned for Barclay's own failings, making false or misleading representations to the Court, and a recurrent pattern of deceptive manipulation of the bankruptcy system. At one point, Barclay even went so far as to offer to pay one of the Debtors' creditors to help him deceive the Court into dismissing the case.

Whether viewed separately or collectively, these actions paint an extremely unsettling picture of Barclay's conduct and practices before this Court. There is no question that Barclay's conduct violated his duties to the Debtors, contravened multiple provisions of the Colorado Rule of Professional Conduct, and broke the trust required of an attorney practicing within the bankruptcy system.

A significant remedy is warranted. Accordingly, in addition to an array of fines, penalties, and sanctions requested herein, redress of Barclay's conduct in this case requires that Barclay be barred (for such period of time as the Court deems appropriate) from further engaging in the practice of bankruptcy law before the United States Bankruptcy Court for the District of Colorado.

## II. PARTIES, JURISDICTION, AND VENUE

1.      Matthew Jason Mennona and Nicole Marie Mennona (the "Debtors") filed a joint Chapter 7 bankruptcy case before the United States Bankruptcy Court for the District of Colorado, Case No. 21-11967 TBM, on April 16, 2021.

2.      The Plaintiff is the United States Trustee for Region 19 (the "UST" and/or "Plaintiff"), which includes the District of Colorado.

3.      The Defendant, Devon Michael Barclay, acted as counsel for the Debtors in the Chapter 7 bankruptcy case, Case No. 21-11967 TBM.

4.      The Defendant, Devon Barclay, P.C., is an entity wholly owned by Devon Michael Barclay, and through which he provides legal services, including the legal services provided to the Debtors in their Chapter 7 bankruptcy case, Case No. 21-11167 TBM.

5.      The UST has standing to bring this action under 28 U.S.C. § 586(a), 11 U.S.C. §§ 307, and 526-528, as well as Fed. R. Bankr. P. 9011.

6.      The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1).

7.      The UST consents, pursuant to Fed. R. Bankr. P. 7008, to entry of a final order or judgment by the Court in the above captioned adversary case.

8.      Venue is proper in the United States Bankruptcy Court for the District of Colorado pursuant to 28 U.S.C. § 1409(a) because the Debtors' bankruptcy case was filed and is pending in this district.

## III. ALLEGATIONS

**Pre-filing meetings and preparation of the Bankruptcy Case.**

9.      The Debtors initially contacted Barclay about providing legal representation for a bankruptcy case on or about October 6, 2020.

10.     The Debtors and Barclay had an initial consultation about the filing on or about October 12, 2020.

11.     Because the Debtors were expecting to receive a significant tax refund for 2020, Barclay advised the Debtors to get and spend their tax refund before filing bankruptcy so that it would not be available to pay creditors during their bankruptcy case. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, pp.55-56).

12.     The Debtors received their federal tax refund on or about February 24, 2021, and paid Barclay $650 on February 26, 2021.

**Barclay Failed to Execute a Written Contract with the Debtors.**

13.     Barclay never provided the Debtors with a signed written contract, as required by 11 U.S.C. § 528.

14.     On March 17, 2021, Barclay did email the Debtors a document titled as a "Representation Agreement." However, that document was not signed by Barclay and did not set out the amount he was charging for the bankruptcy services. (**Exhibit 2** – Representation Agreement).

15.     The only reference made in the email to the unsigned Representation Agreement states: "I'm attaching your petition to review and sign, *along with our standard retainer and mandatory disclosures for you to review*." (**Exhibit 3** – March 17, 2021 Email, p.1) (emphasis added). Nothing in that email requested that the Debtors sign or return the Representation Agreement to Barclay.

16.     The Debtors never signed or returned the representation agreement to Barclay.

17.     On information and belief, Barclay did not make any attempts to obtain the Debtors' signatures on the Representation Agreement, either before or after the filing of the bankruptcy case.

18.     The Representation Agreement lists the scope of services to be provided by Barclay as including:

preparing and filing a bankruptcy petition, attending the meeting of creditors, dealing with creditor phone calls and collection attempts, and responding to up to fifty inbound client phone calls regarding this bankruptcy case. It also includes assisting the client with any requests from the bankruptcy trustee as part of the administration of the case and working on the resolution of any issues.

(**Exhibit 2** – Representation Agreement).

**Barclay Filed the Bankruptcy Case Without The Debtors' Signatures.**

19.     On March 17, 2021, Barclay emailed the Debtors a draft of the Petition, Schedules, and Statement of Financial Affairs ("SOFA") that he had prepared to file in their case.

20.     In that email, Barclay gave the Debtors the following instructions regarding reviewing and signing the bankruptcy documents:

I'm attaching your petition to review and sign, along with our standard retainer and the mandatory disclosures for you to review.

To make life easy, there are two petition files. One is the complete petition, with all the forms and schedules. The second, much smaller document, is just the signature pages extracted from the main document.

Please review the full document, and make sure your address, name, and social security number are correct – and also let me know if there are other changes or if you have other creditors we need to add.

Then, print off just the "sig pages" file, sign the pages, and send back to me. Once we have those, we can file your case!

(**Exhibit 3** – March 17, 2021 Email, p.1).

21.     Barclay did not otherwise meet with the Debtor to review the accuracy of the information contained in the Petition, Schedules, or SOFA. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, p.116-117).

22.     The draft of Schedule A/B that Barclay sent to the Debtors asserted that the Debtors had a checking account and a savings account, each with a balance of $0.00.

23.     On March 18, 2021, the Debtors sent Barclay an email informing him that the balance in their checking account was $5,486, and that they did not have a savings account.

24.     After receiving this email, Barclay modified Schedule A/B to list the amount in the Debtors' checking account as $2,200, and to assert that they had a savings account with a balance of $1,750.

25.     Barclay did not provide the Debtors with a copy of the changes he made to Schedule A/B to allow them an opportunity to confirm the accuracy of those assertions.

26.     Almost a month later, on April 16, 2021, Barclay filed the Debtors' bankruptcy case.

27.     The Debtors' bank statements confirm that on the date that Barclay filed their bankruptcy case, April 16, 2021, the balance of their checking account was $5,000.05.

28.     The Petition, Schedules, and SOFA that Barclay filed on April 16, 2021, all contain the Debtors' *electronic* signatures, thereby indicating that the Debtors had actually signed those documents and swore to the accuracy of the information in those filings under penalty of perjury.

29.     The Debtors had not actually signed the Petition, Schedules, or SOFA on the date Barclay filed the case.

30.     On April 20, 2021, the Debtors sent an email to Barclay with the signed signature pages for the Petition, Schedules, and SOFA. (**Exhibit 4** – April 20, 2021 Email, p.1).

31.     The date the Debtors actually signed those documents was April 19, 2021. (**Exhibit 4** – April 20, 2021 Email, p.2-8).

32.     In their email to Barclay, the Debtors stated: "Here are the signed papers. Sorry we took a few extra days, we wanted to read over everything again." (**Exhibit 4** – April 20, 2021 Email, p.1).

33.     The Debtors were not aware that Barclay had already filed their bankruptcy case when they returned the signed documents to him on April 20, 2021. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, pp.116-117).

**Barclay Filed the Filing Fee Application without the Debtors' Signatures.**

34.     The Representation Agreement that Barclay sent to the Debtors, and referenced as "our standard retainer," informed the Debtors that Barclay "will file an application to pay the filing fees in installments and will provide a platform for electronic payment at no charge." (**Exhibit 2** – Representation Agreement).

35.     At the time of the Debtors' bankruptcy filing, the filing fee for a Chapter 7 case was $338.

36.     On April 16, 2021, Barclay filed an *Application for Individuals to Pay the Filing Fee in Installments (Docket #10) ("Filing Fee Application")* in the Debtors' case.

37.     The Filing Fee Application was filed using Official Form 103A, as is required by the Local Rules of this Court. *See* L.B.R. 1006-1(a).

38.     The Filing Fee Application contains the electronic signatures of both Barclay and the Debtors.

39.     Immediately above the signatures on the Filing Fee Application is a representation that: "By signing here, **you state that you are unable to pay the full filing fee at once**[.]" (**Exhibit 5** – Filing Fee Application) (emphasis added).

40.     The Filing Fee Application further cautions that: "Your debts will not be discharged until your entire fee is paid. If you do not make any payment when it is due, your bankruptcy case may be dismissed, ***and your rights in other bankruptcy proceedings may be affected.***" (**Exhibit 5** – Filing Fee Application) (emphasis added).

41.     The Debtors did not ever actually sign the Filing Fee Application, either prior or after Barclay filed it containing their electronic signatures.

42.     Barclay did not inform the Debtors that the Filing Fee Application requires that they assert that they are unable to pay the filing fee at all once.

43.     Barclay did not review the cautionary statements contained within the Filing Fee Application with the Debtors.

44.     On the date that Barclay filed the Filing Fee Application claiming that the Debtors were "unable to pay the full filing fee," the Debtors had $5,000.05 in their checking account.

45.     Further, the Debtors had informed Barclay as recently as March 18, 2021, that they had $5,486 in their bank account.

**Attempt at Dismissal #1: Fail to Appear at the 341 Meeting**

46.     On April 19, 2021, Simon Rodriguez (the "Trustee") was appointed as the Chapter 7 trustee of the Debtors' bankruptcy estate.

47.     According to the Debtors, in late April or early May, Barclay advised them that they needed to have their bankruptcy case dismissed because the Trustee was greedy, corrupt, would make their life hell, and would make the Debtors sell their house. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, pp.51-58).

48.     The Debtors' meeting of creditors, conducted pursuant to 11 U.S.C. § 341 (the "341 Meeting"), was scheduled to take place on May 17, 2021, at 8:00 a.m.

49.     As a first attempt at orchestrating a dismissal of the Debtors' case, Barclay advised the Debtors not to appear at the 341 Meeting. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, pp.89-91).

50.     On May 12, 2021, the Debtors received a text message from Crystal Hinojos, an assistant in Barclay's office, requesting they provide Barclay with certain documents that were needed for the upcoming 341 Meeting.

51.     That same day, May 12, 2021, the Debtors responded to Ms. Hinojos stating: "I thought Devon said we were letting it lapse & re filing? Do we still need the docs now for that to

happen? I don't know how any of this works so I'm just clarifying." (**Exhibit 6** – Text Log, pp.5-6).

52.     When the Trustee called the 341 Meeting on May 17, 2021, the Debtors were not present.

53.     Prior to the start of the 341 Meeting, Barclay informed the Trustee that the Debtors were not present and told the Trustee that he had not been able to reach them.

54.     On the record for the 341 Meeting, the Trustee asked Barclay how he had tried to reach the Debtors. Barclay told the Trustee that he had tried to reach them by phone (and by at least one other method that was indecipherable from the audio recording of the meeting). (**Exhibit 7** – 341 Transcript for May 17, 2021, p.3).

55.     The Trustee then adjourned the 341 Meeting to June 14, 2021, at 11:00 a.m. (the "Adjourned 341 Meeting").

56.     In his representations to the Trustee at the 341 Meeting, Barclay withheld from the Trustee that the Debtors had purposefully failed to appear for the 341 Meeting so that the Trustee might seek dismissal of their case on that basis.

57.     On June 8, 2021, Barclay sent a text message to the Debtors telling them not to appear at the Adjourned 341 Meeting, and not to provide any of the documents previously requested. More specifically, Barclay stated:

> Hi Nicole, we're trying to get this current case dismissed so don't attend the hearing. Don't worry about the documents either, for right now, since we'll need to update those on the next case anyway (there will be adjusted dates). Sorry, I should have made that clearer earlier, that's my bad[.]

(**Exhibit 6** – Text Log, p.6).

58.     On June 14, 2021, the Trustee convened the Adjourned 341 Meeting.

59.     Neither Barclay nor the Debtors appeared for the Adjourned 341 Meeting.

## **Attempt at Dismissal #2: Fail to Pay the Filing Fee**

60.     On April, 19, 2021, the Court entered an Order (Docket #12) (the "Installment Payments Order") approving the Filing Fee Application, and requiring the Debtors to pay the filing fee in three installments: (1) $126 due on April 30, 2021; (2) $106 due on May 28, 2021; and (3) $106 due on June 25, 2021.

61.     On or about April 23, 2021, the Debtors paid the first $126 installment payment toward the filing fee.

62.     On May 25, 2021, the Debtors sent an email to Barclay inquiring about an invoice they had received telling them to make a $107 payment to Barclay by May 25, 2021. (**Exhibit 8** – May 25, 2021 Email, pp.2-3).

63.     In response, Barclay informed the Debtors that the invoice was for the "court fee," and advised them not to pay it so that the case would get dismissed. More specifically, Barclay responded:

> There are 3 court fee invoices, but don't pay this one – we need the case to get dismissed, and not paying the court fee is the fastest way to get there :)

(**Exhibit 8** – May 25, 2021 Email, p.1).

64.     Barclay did not inform the Debtors that, pursuant to 11 U.S.C. § 109(g), obtaining dismissal of their case through a willful failure to comply with the Instalment Payments Order could result in them being barred from filing another bankruptcy case for at least 180 days.

### Attempt at Dismissal #3: Allege the Existence of Unfiled Pay Advices

65.     On June 3, 2021, the Trustee filed a *Notice of Possible Dividends (Docket #20)* in the Debtors' case.

66.     On June 14, 2021, at 9:50 a.m., which was about an hour before the Adjourned 341 Meeting was scheduled to take place, Barclay had the following text message exchange with the Debtors:

> *Barclay*: Hi Nicole - so, our buddy is up to his old tricks and has filed a report of possible dividends into the case. It will prevent the case from being dismissed over nonpayment of the court filing fee. Clever.

> *Nicole Mennona*: Ok great. What exactly does "report of possible dividends" mean?

> *Barclay*: The good news is that I'm clever too - since we held the case for awhile before we filed it, the paystubs we filed were actually slightly out of date. As a result, we didn't comply with a mandatory requirement and when I point that out to the court, they will have to dismiss the case by statute. So we're going to be OK. I will look up the cure deadline for that paystub issue today, and, provided we've missed it (which I think we have) we'll be good to dismiss[.]

(**Exhibit 6** – Text Log, p.7).

67.     On June 29, 2021, Barclay filed the *Debtor's [sic] Motion to Dismiss Chapter 7 Case (Docket #33) (the "First Motion to Dismiss")* asserting that the Debtors case should be dismissed because they had not filed pay advices that were required by Section 521(a)(1).

68.     Section 521(a)(1) provides: "The debtor shall file . . . unless the court orders otherwise – copies of all payment advice or other evidence of payment received within 60 days

before the date of the filing of the petition, by the debtor from any employer of the debtor." 11 U.S.C. § 521(a)(1)(b)(iv).

69.     Barclay alleged that Matthew Mennona failed to file pay advices for March 17, 2021 and March 31, 2021, and that Nicole Mennona failed to file pay advices for April 9, 2021, and April 16, 2021.

70.     Nicole Mennona had given Barclay copies of her pay advices (including her April 9, 2021, and April 16, 2021 pay advices) before the case was filed.

71.     When he filed the First Motion to Dismiss, Barclay had in his possession the very pay advices that he represented to the Court as providing a basis for dismissal of Nicole Mennona's case (*i.e.* - the April 9, 2021, and April 16, 2021 pay advices), and had previously filed those same pay advices on the docket of the Court.

72.     Despite this glaring factual deficiency, Barclay repeatedly assured the Debtors that dismissal was certain and imminent. For instance, before even preparing the First Motion to Dismiss, Barclay assured the Debtors that "we're going to be OK," "they will have to dismiss the case by statute," and "we'll be good to dismiss." (**Exhibit 6** – Text Log, p.7). Then after filing the First Motion to Dismiss, Barclay sent an email to the Debtors stating: "I pored *[sic]* over the statute to look for any loopholes they could exploit to keep this case open and I don't believe there are any. So I am confident that the case will be dismissed." (**Exhibit 9** – June 30, 2021 Email, p.1).

73.     On June 30, 2021, the Court entered an *Order for Compliance with Local Bankruptcy Rule 9013-1 or Other Applicable Rules of Procedure Regarding Service and Notice (Docket #36) ("Compliance Order")*, informing Barclay that he had failed to comply with the notice and service requirements of L.B.R. 9013-1 and Fed. R. Bankr. P. 2002 in relation to the First Motion to Dismiss.

74.     On July 10, 2021, having received the Compliance Order, but no explanation about it from Barclay, the Debtors sent Barclay a text message regarding the Compliance Order, which resulted in the following discussion:

> *Nicole Mennona*: Hi Devon! Just wanted to make sure this was taken care of? I'm sure you're on top of it. Thanks!

> *Barclay*: oh yes, very much so. Dismissal appears to be automatic as a matter of law, so I didn't send it out on notice. In retrospect, I might have tried filing a status report informing the judge, instead of a motion to dismiss. Nonetheless, I fixed the judge's issue with it so now I'm just waiting for the deadline to run.

(**Exhibit 6** – Text Log, pp.8-9).

75.     On July 20, 2021, the Trustee filed an *Objection by Trustee to Debtor's Motion to Dismiss Chapter 7 Case (Docket #40) ("Objection to First Motion to Dismiss")*, which pointed out that the pay advices Barclay had asserted as justifying dismissal of Nicole Mennona's case had in fact been filed with the Court. The Trustee also raised the question of whether the pay advices asserted as a basis for dismissal of Matthew Mennona's case were actually omitted or whether Mr.

Mennona simply did not receive any pay during for those periods. Further, the Trustee cited to circuit level authority interpreting Section 521 in such a way that would prohibit a debtor from using the omission of their own pay advices as a sword to obtain dismissal of their bankruptcy case. *See e.g.*, *In re Warren*, 568 F.3d 1113, 1117-1118 (9th Cir. 2009) ("We therefore hold, consistently with the First Circuit, that a bankruptcy court retains discretion to waive the § 521(a)(1) filing requirement even after the forty-five day filing deadline set forth in § 521(i)(1) has passed."); *In re Acosta–Rivera,* 557 F.3d 8, at 9, 13-14 (1st Cir. 2009).

76.     On August 17, 2021, the Court held a hearing on the First Motion to Dismiss. At that hearing, the Court denied the First Motion to Dismiss as to Nicole Mennona based on admissions made at the hearing. More specifically, the Court had the following exchange with Barclay during the hearing regarding the pay stubs being asserted as the basis for dismissal of Nicole Mennona's case:

*The Court*: Let me ask you, Mr. Barclay, factually, is your motion to dismiss correct?

*Barclay*: I believe so, Your Honor.

*The Court*: Okay. You have told me in Paragraph 5 that the debtor's spouse is paid weekly, but omitted pay stubs for April 9 and April 16, 2021. Do you see that in your motion, sir?

*Barclay*: Oh, I do. And I think I am wrong, in fact. The missing stub is for April 16th. I believe the pay stub for April 9th is, in fact, in there.

*The Court*: Okay. So what you told me here is false. Is that right, sir?

*Barclay*: Yes. I believe that –

*The Court*: Okay. And now you're telling me that it's false only because the omitted pay stub on April 9 was there, but the pay stub for April 16 was not there. Is that right?

*Barclay*: That is correct.

*The Court*: Okay. And that's false too, isn't it?

*Barclay*: I don't believe so. I just reviewed the pay stubs that we filed, and I do not see the --

*The Court*: Okay. Do you have those in front of you, sir? You filed them. You should –

*Barclay*: I do.

*The Court*: -- have them. Docket Number 9. Look at the last page, Page 6. Do you have it?

10

*Barclay*: Oh, you're right, Your Honor. It is there.

*The Court*: Okay. And you didn't even bother looking, even though the trustee had raised this exact point in the objection at Docket Number 40? Is that right, sir?

*Barclay*: Your Honor, I have actually looked at this several times, including once again this morning, and I did not notice that that April 16 stub was there. That is my mistake.

*The Court*: All right. People do make mistakes. I make mistakes. I'm sure the Trustee and Counsel make mistakes, and -- but it is very, very disconcerting to me to see you make a representation like this -- this is a very important issue, in terms of your motion to dismiss. It's the only basis for the motion to dismiss, for Ms. Nicole Marie Mennona. And the Trustee identified that problem -- I actually identified the problem in maybe 10 seconds, just looking at it to begin with, before even reading the Trustee's objection; and yet, you have asserted this, and it's really -- I want to suggest to you, you need to be much more careful when you're presenting materials in a federal court, sir.  Okay. So, given that, now you acknowledge that the debtor's spouse in fact made all of the – submitted all of the payment stubs that were required under Section 521(a)(1)(b)(iv). Is that right?

*Barclay*: That is correct.

(**Exhibit 10** – August 17, 2021 Hearing, Partial Transcript, pp.5-7).

77.     In the minutes of the August 17, 2021 hearing, the Court made the following entry as to request for dismissal of Nicole Mennona's case:

> The Debtors conceded that they misstated the facts alleged in support of their Motion to Dismiss as to Nicole Marie Mennona. Particularly, the Debtors admitted that the Debtors had filed all the wage statements due for Nicole Marie Mennona.

*Minute Order (Docket #50)*. As to Matthew Mennona, the Court set the dismissal motion for an evidentiary hearing.

78.     Immediately following the hearing on the First Motion to Dismiss, Barclay sent a text message to Nicole Mennona:

*Barclay*: Hi Nicole, can you send me your paystubs for March 19, March 5, and February 26?

*Nicole Mennona*: Just mine? Or Matt's too?

*Barclay*: Just you. I fucked something up at the hearing - I'd filed the motion to dismiss your case based on the 4/16 paystub being not filed, but in fact it was. So the judge yelled at me and refused to dismiss your case. That said, you ARE actually missing those other three, so I'm going to file a motion to reconsider and/or a new motion to dismiss based on the other stubs that really are missing... ugh[.]

(**Exhibit 6** – Text Log, pp.10-11).

79.    Nicole Mennona did not send Barclay any pay advices in response to his request, and Barclay did not follow up with Mrs. Mennona to inquire about why she did not provide the requested pay stubs.

80.    On August 29, 2021, Barclay filed the *Debtor's Voluntary Motion to Dismiss Chapter 7 Case (Docket #57) (the "Second Motion to Dismiss")*, seeking dismissal of Nicole Mennona's case on the basis that: "On further review of the paystubs submitted to the court, it appears that [Nicole Mennona] nonetheless failed to submit pay advices received on February 26, 2021, March 5, 2021, and March 19, 2021."

81.    What is not disclosed in the Second Motion to Dismiss is that Nicole Mennona did not have pay advices for February 26, 2021, March 5, 2021, or March 19, 2021, because she did not work during those pay periods.

82.    Nicole Mennona had alerted Barclay to the fact that she didn't receive pay for some of the relevant periods when she originally sent him her pay advices at the outset of the case. In that email, Mrs. Mennona explained: "There are two weeks that don't have paychecks because I didn't work those weekends so there was no pay." (**Exhibit 11** – April 16, 2021 Email, p.1).

83.    On September 17, 2021, the Trustee filed an *Objection (Docket #67)* in opposition to the Second Motion to Dismiss.

84.    On September 30, 2021, in response to discovery requests issued by the Trustee, Mrs. Mennona sent Barclay all of her pay advices for the entire year. She did not, however, include any pay advice for February 26, 2021, March 5, 2021, or March 19, 2021. To explain the absence of those pay advices, Mrs. Mennona sent a text message to Barclay stating:

> Ok I just sent all of my paystubs from this year to you. Separated by month. February only has two because we had Covid that month so I couldn't work. Any others that seem missing were vacation times so no stubs.

(**Exhibit 6** – Text Log, pp.23-24).

85.    Barclay failed to conduct a reasonable investigation into the reason that Mrs. Mennona had not provided him with the February 26, 2021, March 5, 2021, and March 19, 2021 pay advices before asserting the absence of those pay advices as a basis for dismissal of Nicole Mennona's case in the Second Motion to Dismiss.

86.    Even after learning that Mrs. Mennona did not have pay advices for February 26, 2021, March 5, 2021, and March 19, 2021, Barclay did not withdraw the Second Motion to Dismiss, and did not inform the Trustee or the Court about the false assertions made therein.

**Barclay Causes the Debtors to be Sanctioned.**

87.     Throughout the Debtors case, the Trustee repeatedly attempted to obtain documents and information from the Debtors that would allow him to assess the case.

88.     Barclay did not communicate these requests to the Debtors, and ultimately caused the Debtors to be sanctioned for failing to comply with those requests and related orders.

89.     More specifically, on May 13, 2021, the Trustee sent his initial request through an e-mail to Barclay requesting documents and information he needed to prepare for and conduct the 341 Meeting, such as copies of the Debtors' identification cards, social security cards, and a signed and completed Trustee Information Sheet ("TIS"). In addition, the Trustee requested the Comparative Market Analysis ("CMA") that the Debtors had identified on Schedule A/B as supporting the value asserted for their residence at 9647 W. Chatfield Avenue, Littleton, CO 80128 (the "Real Property"). (**Exhibit 12** – May 13, 2021 Email, p.1).

90.     Barclay had received the CMA from the Debtors on March 18, 2021, but did not provide it to the Trustee. In fact, Barclay did not respond to the Trustee's May 13, 2021 email in any way.

91.     Barclay did not apprise the Debtors of the request for documents made by the Trustee in the May 13, 2021 email.

92.     At the 341 Meeting on May 17, 2021, the Trustee again requested that Barclay provide him with the CMA that the Debtors had used to support the value of the Real Property.

93.     Again, Barclay did not apprise the Debtors of the Trustee's request for the CMA and did not provide the CMA to the Trustee as requested.

94.     On June 4, 2021, the Trustee's counsel, Kevin Neiman, emailed Barclay requesting that he provide the Trustee with the CMA, as well as some corresponding documents, by June 10, 2021. More specifically, that email states:

Hello Devon. Hope all is well.

I assume you already received the below [notice filed by the trustee] re the debtors' rescheduled meeting of creditors being 6/14/21 at 11 am. But in light of the debtors' failure to appear at the last scheduled meeting of creditors, I wanted to forward this on to ensure notice and appearance.

Also, the trustee has requested a CMA on the debtors' real property and has yet to received it - both via e-mail on 5/13/2021 and at the meeting of creditors. Please provide that to me as well as proof of current real property insurance and the most recent loan statement, all via email to me by 6/10/21.

Thanks in advance, and wishing you a great weekend.

Kevin

(**Exhibit 13** – June 4, 2021 Email, p.1).

95.     Barclay did not respond to requests for documents as made through the June 4, 2021 email.

96.     Barclay did not apprise the Debtors of the Trustee's request for documents as set out in the June 4, 2021 email.

97.     To the contrary, on June 8, 2021, Barclay sent a text message to the Debtors telling them not to appear at the adjourned 341 Meeting, and that they did not need to provide any documents to the Trustee. More specifically, Barclay stated:

> Hi Nicole, we're trying to get this current case dismissed so don't attend the hearing. Don't worry about the documents either, for right now, since we'll need to update those on the next case anyway (there will be adjusted dates). Sorry, I should have made that clearer earlier, that's my bad[.]

(**Exhibit 6** – Text Log, p.6).

98.     On June 15, 2021, the Trustee filed a *Motion to Compel Turnover of Property of the Estate (Docket #27) (the "Turnover Motion")*, requesting the Debtors be ordered to provide the Trustee with the following documents and information:

    a.  keys and all other access information to the Real Property such as alarm and garage codes;

    b.  the "CMA" referenced by the Debtors in their Schedule A/B in relation to the value of their residence;

    c.  proof of insurance on their residence;

    d.  the most recent loan statement from Citizens Bank in relation to the Debtors' residence (and any other lender that has a lien or encumbrance on the property);

    e.  picture identification issued by a governmental unit, or other personal identifying information that establishes the Debtors' identity and evidence of their social security numbers or a written statement that such documentation does not exist;

    f.  documents or copies of (i) the Debtors' current income such as the most recent payment advice, pay stub, or earnings statement; and (ii) statements for each of the Debtors' depository accounts (bank, credit union and investment) for the time period that includes April 16, 2021 or a written statement that such documentation does not exist; and

    g.  an executed and completed "wet" version of the trustee information sheet and a completed domestic support obligation form.

14

99.     On June 30, 2021, Barclay filed an objection to the Turnover Motion, making the following two statements as the entire basis of the objection:

1.  No meeting of creditors has yet been held in the current case, and the opinion of value currently being proposed by the trustee relies primarily on the opinion of a realtor with whom the trustee has an existing and ongoing business relationship.

2.  Debtors have filed a motion to dismiss the present bankruptcy case on statutory grounds.

*Debtor's [sic] Objection to Turnover Motion (Docket #35).*

100.    On August 3, 2021, the Debtors sent Barclay a text message stating: "Hi Devon! I'm sure you would have reached out but just checking in to see if there's been any new developments/decisions/movement on the case?" Barclay responded that there were "no real developments" and proceeded to have a discussion with the Debtors about potentially converting the case to Chapter 13. (*See* **Exhibit 6** – Text Log, p.9). At no point in that conversation did Barclay apprise the Debtors of the Turnover Motion or the documents and information being requested therein.

101.    Barclay did not discuss the Turnover Motion with the Debtors by email, phone, or text message at any point between the date the Turnover Motion was filed and the date of the hearing on the Turnover Motion.

102.    On August 17, 2021, the Court held a non-evidentiary hearing on the Turnover Motion. (The Debtors were not required to be present at that hearing and were not present at the hearing).

103.    On August 19, 2021, the Court entered an *Order Granting Motion by Trustee to Compel Turnover of Property of the Estate (Docket #51) (the "Turnover Order")*, wherein the Court ordered that within seven days (by August 26, 2021) the Debtors must turn over all of the items requested by the Trustee in the Turnover Motion and provided a detailed list of those specific items.

104.    Barclay did not apprise the Debtors of the Turnover Order.

105.    Indeed, Barclay did not have any communications with the Debtors by email, phone, or text message regarding the Turnover Order at any point in between the date of the hearing on the Turnover Motion and the date that the Debtors were required to have complied with the Turnover Order, August 26, 2021.

106.    The Trustee did not receive any of the documents or information by the date established in the Turnover Order, August 26, 2021.

107.    On September 2, 2021, the Trustee filed a *Motion by Trustee for Forthwith Hearing on Order Granting Turnover Motion (Docket #62) (the "Enforcement Motion")*, in which he notified the Court that the Debtors had not complied with the Turnover Order.

108.     At the point that the Trustee filed the Enforcement Motion, the Debtors still had not turned over any of the enumerated items as required by the Turnover Order.

109.     On September 3, 2021, Barclay emailed the Debtors requesting that they send him two items: (1) bank statements covering April 16, 2021, and (2) pay stubs covering April 16, 2021. (**Exhibit 14 –** September 3, 2021 Email, p.1).

110.     That same day, September 3, 2021, the Debtors sent Barclay the exact documents he had requested, specifically, a bank statement covering April 16, 2021, and a pay stub for each of the Debtors covering the date of April 16, 2021.

111.     On September 7, 2021, the Court issued an *Order to Debtors to Show Cause Why Sanctions for Civil Contempt Should Not Be Imposed and Notice of Hearing ("Order to Show Cause") (Docket #63)*, warning that if the Trustee's representations in the Enforcement Motion are true, the Debtors may be held in contempt for failing to comply with the Turnover Order.

112.     On September 9, 2021, after entry of the Order to Show Cause, Barclay emailed the Debtors requesting that they sign the Trustee Information Sheet and Domestic Support Obligation Form, and that the Debtors mail those documents directly to the Trustee's counsel, Kevin Neiman. (**Exhibit 15 –** September 9, 2021 Email, p.1).

113.     At the end of that email, Barclay included the following statement encouraging the Debtors to inflict harm on Trustee's counsel, stating: "If either of you have COVID or some other highly infectious, nasty disease – or if you know someone who does – please make sure they lick the envelope and handle it as much as possible." (**Exhibit 15** – September 9, 2021 Email, p.1).

114.     On September 12, 2021, Barclay filed a *Response to Order to Show Cause (Docket #65)* asserting the "Debtors have provided the trustee with most of the items requested in their motion for turnover" and that the "Debtors have essentially complied with the Court's order for turnover, though admit some items are missing."

115.     In actual fact, of the eight (8) items the Debtors were required to turn over to the Trustee pursuant to the Turnover Order, at most two (2) of those items – the Debtors' identification cards, and the CMA – had been turned over to the Trustee by September 12, 2021.

116.     On September 16, 2021, the Court held a hearing on the Order to Show Cause. During that hearing, Barclay represented to the Court that the Debtors had complied with all provisions of the Turnover Order other than providing the Trustee with keys to their residence. The Trustee disputed Barclay's assertions, claiming instead that other items – namely, the Trustee Information Sheet, the DSO Form, the Debtors' current pay advices, and the bank statement covering April 16, 2021 – had still not been turned over. Given the factual dispute, the Court set the matter for an evidentiary hearing to take place on September 22, 2021 at 9:00 a.m.

117.     On September 20, 2021, the Debtors and the Trustee filed the *Stipulated Facts and Joint Motion to Convert Evidentiary Hearing to Argument on Sanctions (Docket #78) ("Stipulated Facts")*.

118.    Within the Stipulated Facts, the Debtors acknowledged that they had not turned over any of the items by August 26, 2021, as required by the Turnover Order, and had not turned over the (1) keys, (2) Trustee Information Sheet, (3) DSO Form, (4) current pay advices, or (5) bank statement covering April 16, 2021, as of the date of the hearing on the Order to Show Cause.

119.    On September 22, 2021, the Court held a hearing (the "Sanctions Hearing") solely to determine the appropriate sanctions to enter against the Debtors based on their failure to comply with the Turnover Order.

120.    At the Sanctions Hearing, the Court held the Debtors in contempt for failing to comply with the Turnover Order and imposed a monetary sanction against the Debtors in the amount of $2,783.50.

121.    At the Sanctions Hearing, after the amount of the sanction was established, Barclay admitted that a "good part of the blame" rests with him and informed the Court that he was going to pay the monetary sanctions on the Debtors' behalf.

**Attempt at Dismissal #4: A Scheme to Defraud the Court**

122.    The morning after the initial hearing on the Order to Show Cause, on September 17, 2021, at 10:54 a.m., Barclay sent an email to an employee of one of the Debtors' creditors, B.C. Services. The email from Mr. Barclay stated:

Hi Amy,

I'm writing to request a bit of a favor.

I've got an active Ch 7 that has gone completely off the rails. Essentially, the trustee is actively trying to extort my clients. I believe I can get the case dismissed on statutory grounds, but it's a very open question. Should that fail, we'll be left in a very protracted appeals process. We are prepared to do that, but for obvious reasons would prefer not to.

In the event that we win, which I think we will, BC Services will receive nothing – but, I'd prefer to see your client get paid, and I'd much prefer not to wait until mid-October to resolve those issues at trial. Instead, what I'd like is for BC Services to request a copy of my clients *[sic]* tax returns, and we will willfully not comply with that request. In response, BC Services would file a motion for dismissal of the case on statutory grounds.

We will prepare a draft of the motion for your use, and in exchange for all of this we will pay anything owed to BC Services in full and compensate BC Services for its time and cooperation in this process.

Please let me know if this is of interest. I think it's a good deal for both BC Services and my clients.

Cheers,

Devon

(**Exhibit 16** – Barclay Emails to B.C. Services, p.5).

123.    On September 21, 2021, B.C. Services sent the email to the Trustee, and copied Barclay on that communication.

124.    After seeing that the Trustee had been notified of the email, Barclay sent B.C. Services another email asserting that the prior communication was "privileged in nature and content" as a "confidential settlement offer," and claiming that his intent was "to be completely transparent with the court regarding the circumstances giving rise to the motion, and the relief sought." (**Exhibit 16** – Barclay Emails to B.C. Services, p.3).

125.    The Debtors' Schedule E/F lists a debt to B.C. Services, which they described as a "collection" debt in the amount of $1,000. (**Exhibit 17** – Schedule E/F, p.2).

126.    The Debtors had not asked Barclay to contact B.C. Services, or to settle any dispute between the Debtors and B.C. Services. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, p.104).

127.    Barclay did not inform the Debtors of his proposal to B.C. Services, including his commitment for the Debtors to pay "anything owed to BC Services in full and compensate BC Services for its time and cooperation in this process."

128.    The Debtors did not authorized Barclay to make this proposal to B.C. Services. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, pp.100-109).

129.    The Debtors first learned of Barclay's communications with B.C. Services when the aforementioned email was read out loud by the Court during the Sanctions Hearing on September 22, 2021. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, pp.100-102).

130.    In further recognition of their lack of consent to Barclay's email, the Debtors testified that they were appalled by the email Barclay sent to B.C. Services and recognize the same as fraudulent activity. (**Exhibit 1** – Partial 341 Transcript for January 7, 2022, pp.100-109).

131.    At the time of Barclay's email to B.C. Services, Barclay had copies of the Debtors' 2020 tax returns in his possession and could have turned those returns over to B.C. Services upon request.

## The Debtors Obtain New Counsel.

132.    On October 11, 2021, the Debtors retained the law firm of Berken Cloyes, P.C. to provide further representation to them in their bankruptcy case, and Berken Cloyes, P.C. filed a notice with the Court that it was being substituted in as counsel in place of Barclay.

133.    Following the substitution of counsel, the Debtors withdrew the then pending First Motion to Dismiss and Second Motion to Dismiss. *See* Docket #100 and Docket #137.

134.    On January 7, 2022, the Trustee was finally able conduct and conclude the 341 Meeting, with the Debtors appearing and providing testimony at the same.

135.    On February 23, 2022, an Order of Discharge (Docket #142) entered in favor of the Debtors.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (VIOLATIONS OF RULE 1008 AND 9011)

136.    The UST hereby realleges and incorporates by this reference all preceding paragraphs.

137.    "[A]n attorney needs to know for certain that his client wishes to file for bankruptcy before a petition is filed." *In re Phillips*, 433 F.3d 1068, 1071 (8th Cir. 2006).

138.    Rule 1008 of the Federal Rules of Bankruptcy Procedure mandates that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain a sworn declaration as provided in 28 U.S.C. § 1746." Fed. R. Bankr. P. 1008.

139.    The signature requirement found in Fed. R. Bankr. P. 1008 is "a means of not only authorizing the filing of those documents, but of verifying, under penalty of perjury, that they have reviewed the information contained therein and that it is true and correct to the best of their knowledge, information and belief." *In re Bradley,* 495 B.R. 747, 760 n.3 (Bankr. S.D. Tex. 2013).

140.    "In filing a petition electronically, the practitioner represents to the court that he or she has secured an originally executed petition physically signed by debtor *prior to* electronically filing the case." *In re Wenk,* 296 B.R. 719, 724 (Bankr. E.D. Va. 2002) (emphasis in original); *In re Dobbs*, 535 B.R. 675, 686 (Bankr. N.D. Miss. 2015).

141.    Absent the existence of such a signature, the practitioner violates Fed. R. Bankr. P. 9011, which specifically requires that "[w]hen these rules require copies of a signed or verified paper, it shall suffice if the original is signed or verified and the copies are conformed to the original." Fed. R. Bankr. P. 9011(f). "Thus, multiple bankruptcy courts have found that electronically filing a document bearing an electronic signature that was not actually or validly signed constitutes a forgery amounting to a Rule 9011 violation." *In re Stomberg,* 487 B.R. 775, 808 (Bankr. S.D. Tex. 2013) (quotation omitted); *In re Phillips*, 317 B.R. 518, 524 (B.A.P. 8th Cir. 2004) (finding that without the original signature on the debtor's petition "the factual contentions have no evidentiary support and thus the petition violates Rule 9011(b)(3)."); *In re Burnett*, No. 21-02018-DD, 2022 WL 802586, at *8 (Bankr. D.S.C. Mar. 16, 2022) ("The filing of a document with the debtor's electronic signature is a certification by an attorney that he has appropriately obtained the signature."); *In re T.H.,* 529 B.R. 112, 141 (Bankr. E.D. Va. 2015 (finding that attorney violated Fed. R. Bankr. P. 9011 by filing a petition without the debtor's signature); *In re Alvarado,* 363 B.R. 484, 491 (Bankr. E.D. Va. 2007) (finding Rule 9011 was violated where attorney filed a second case without debtor's signature); *In re Ludwick,* 185 B.R.

19

238, 244-47 (Bankr. W.D. Mich. 1995) (suspending attorney for forging client signatures in violation of Fed. R. Bankr. P. 9011).

142.    The need for an attorney to receive and retain a debtor's actual "wet signature" is also mandated by this Court's local rules, which require: "Documents required to be retained by attorneys with actual signatures of the debtor include all petitions, statements, schedules, lists, and amendments thereto." L.B.R. 9011-4; *see also* L.B.R. 5005-4(a)(5) (same).

143.    Fed. R. Bankr. R. 9011(c) authorizes the Court to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed. R. Bankr. P. 9011(c); *see also, In re Stomberg,* 487 B.R. at 807 ("Rule 1008 is related to Rule 9011(b) because, by failing to obtain the debtor's verification as to the accuracy of the documents he files, an attorney falsely represents to the court that 'the allegations and other factual contentions have evidentiary support.'").

144.    Further, Section 105 provides bankruptcy courts with a broad power to implement the provisions of the Bankruptcy Code and to prevent abuse of the bankruptcy process. *Law v. Siegel,* 571 U.S. 415, 421, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014); *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989); *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000); *In re Rainbow Mag., Inc.*, 77 F.3d 278, 284 (9th Cir. 1996); *In re Ludwick,* 185 B.R. at 245 ("The clear language of 11 U.S.C. § 105(a) grants this Court significant equitable powers as well as latitude in framing the relief necessary to carry out both the specific provisions of the statute as well as its philosophical underpinnings.").

145.    Barclay did not obtain the Debtors' signatures before filing the Petition with the Court.

146.    Instead, on the date Barclay filed the bankruptcy case, April 16, 2021, the Debtors were still in the process of reviewing the accuracy of their bankruptcy documents.

147.    Barclay's filing of the Petition with electronic signatures for the Debtors, but without actually obtaining the Debtors' "wet signatures" violated Fed. R. Bankr. P. 1008 and 9011.

WHEREFORE, the UST requests the Court enter judgment against Barclay (a) imposing sanctions, fines, and penalties against Barclay as appropriate under 11 U.S.C. § 105 and Fed. R. Bankr. P. 9011, and (b) for such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF 11 U.S.C. § 526(a)(2))

148.    The UST hereby realleges and incorporates by this reference all preceding paragraphs.

149.    Congress enacted Section 526 to "strengthen professionalism standards for attorneys and others who assist consumer debtors with their bankruptcy cases." *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 263 n. 3, 130 S.Ct. 1324, 176 L.Ed.2d 79 (2010); H.R.Rep.

No. 109–31, 109th Cong. 1st Sess. at 4 (April 8, 2005); 4 Collier on Bankruptcy ¶ 526.LH[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

150.    Section 526 contains four specific prohibitions that a "debt relief agency" shall not:

(1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

(2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

(3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—(A) the services that such agency will provide to such person; or (B) the benefits and risks that may result if such person becomes a debtor in a case under this title; or

(4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526(a).

*151.*    A "debt relief agency" is defined, in Section 101(12A) as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration." 11 U.S.C. § 101(12A); *see also Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. at 239* (bankruptcy attorneys fall within the definition of a "debt relief agency").

152.    Section 101(4A) broadly defines "bankruptcy assistance" to mean "any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditor's meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title."

153.    An "assisted person," in turn, is "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425." 11 U.S.C. § 101(3).

154.    As a remedy for violating these requirements, Section 526 provides that if an attorney is found to have "intentionally violated" any of the restrictions or requirements in Section 526, or to have "engaged in a clear and consistent pattern or practice" of violating Section 526, the Court may enter an injunction against the attorney and/or impose an appropriate civil penalty against the offending person. 11 U.S.C. § 526(c)(5).

155.    For purposes of Section 526(c)(5), an intentional violation may be established through circumstantial evidence. *L. Sols. of Chicago LLC v. Corbett*, No. 1:18-CV-00677-AKK, 2019 WL 1125568, at *7 (N.D. Ala. Mar. 12, 2019), *aff'd*, 971 F.3d 1299 (11th Cir. 2020) ("Because direct evidence of intent is rarely available, a court may infer intent from the totality of the circumstances, and reckless indifference may be sufficient to establish intent in some cases.") (quotation omitted). For instance, an attorney's failure to take legal obligations seriously or to make an effort to comply with the law constitutes intentional conduct. *See Id.* Reckless disregard for the truth of the matter asserted is sufficient to establish that a false or misleading statement was made intentionally. *See Id*.

156.    "The requirement of intent does not apply to the second – 'clear and consistent pattern or practice' – category based on the text of the statute." *Hobbs v. Chesson*, No. MC 16-00201, 2018 WL 4172667, at *12 (Bankr. W.D. La. Aug. 29, 2018). Instead, a court may find a clear and consistent pattern or practice exists through evidence that the violation was part of "a standard or routine way of operating." *Corbett* 2019 WL 1125568 at *8 (quoting *In re Maxwell*, 281 B.R. 101, 103 (Bankr. D. Mass. 2002)); *In re Cook*, 610 B.R. 852, 867 (Bankr. N.D. Ill. 2019) ("A civil penalty for repeated violations of its statutory obligations and the choice to bury its head in the sand and ignore an obvious issue is therefore appropriate."); *see also First Nat'l Bank v. Off. of Comptroller of Currency*, 956 F.2d 1456, 1461–62 (8th Cir. 1992) (construing the identical "clear and consistent pattern or practice" provision in the Truth in Lending Act).

157.    The Bankruptcy Code does not more specifically establish the appropriate injunction or the amount of the civil penalty. Rather, these remedies should be designed to deter offending parties and others from similar conduct in the future. *In re Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017) (citing *In re Huffman*, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014)). Courts have imposed penalties in varying amounts, based on the facts in each case, sufficient to deter offending conduct. *See, e.g., In re Wicker*, 702 F.3d 874, 878 (6th Cir. 2012) (affirming $5,000 civil penalty bankruptcy court imposed on debt relief agency under Section 526(c)(5)); *In re Hanawahine*, 577 B.R. at 580 (imposing a $4,311 penalty equivalent to treble damages); *In re Huffman*, 505 B.R. at 766 (imposing a $28,000 penalty as four times the fees charged to the debtor). Further, where appropriate, courts have imposed an injunctive remedy such as prohibiting the attorney from practicing before the bankruptcy court. *See In re Parker*, 485 F. App'x 989, 991-992 (11th Cir. 2012) (affirming suspension of attorney under section 526(c)(5)(B) and Bankruptcy Rule 9011).

158.    Barclay acted as a debt relief agency in relation to the Debtors' case.

159.    The Debtors are "assisted persons" and received "bankruptcy assistance" from Barclay.

160.    By filing the Debtors' case without their signatures, Barclay made a statement in a document filed in the case that was untrue or misleading, or that upon the exercise of reasonable care, should have been known by Barclay to be untrue or misleading, in violation of 11 U.S.C. § 526(a)(2).

161.    By filing the Filing Fee Application without the Debtors' signatures, Barclay made a statement in a document filed in the case that was untrue or misleading, or that upon the exercise

of reasonable care, should have been known by Barclay to be untrue or misleading, in violation of 11 U.S.C. § 526(a)(2).

162. By filing the Debtors' Schedule A/B, asserting that the Debtors' checking account contained $2,200, Barclay made a statement in a document filed in the case that was untrue or misleading, or that upon the exercise of reasonable care, should have been known by Barclay to be untrue or misleading, in violation of 11 U.S.C. § 526(a)(2).

163. By filing the Debtors' Schedule A/B with an assertion that the Debtors had a savings account containing $1,700, Barclay made a statement in a document filed in the case that was untrue or misleading, or that upon the exercise of reasonable care, should have been known by Barclay to be untrue or misleading, in violation of 11 U.S.C. § 526(a)(2).

164. By filing the Filing Fee Application, which represented that the Debtors were unable to pay the full filing fee all at once, Barclay made a statement in a document filed in the case that was untrue or misleading, or that upon the exercise of reasonable care, should have been known by Barclay to be untrue or misleading, in violation of 11 U.S.C. § 526(a)(2).

165. Barclay's assertion in the First Motion to Dismiss that Nicole Mennona's pay advices for April 9, 2021 and April 16, 2021 had not been filed with the Court was untrue, misleading, and upon the exercise of reasonable care should have been known by Barclay to be untrue or misleading, in violation of Section 526(a)(2).

166. By asserting in the Second Motion to Dismiss that the absence of Mrs. Mennona's pay advices for February 26, 2021, March 5, 2021, and March 19, 2021, afforded a basis for dismissal of the case, without disclosing that those pay advices did not exist at all, Barclay made a statement in a document that was untrue, misleading, and upon the exercise of reasonable care should have known to Barclay to be untrue or misleading, in violation of Section 526(a)(2).

167. Barclay's assertion in the *Response to the Order to Show Cause*, that the "Debtors have provided most of the items requested" and that the "Debtors have essentially complied with the Court's order for turnover" was untrue, misleading, and upon the exercise of reasonable care should have been known by Barclay to be untrue or misleading, in violation of Section 526(a)(2).

168. In actual fact, of the eight (8) items the Debtors were required to turn over to the Trustee pursuant to the Turnover Order, none had been timely turned over to the Trustee by the date set out in the Turnover Order (August 26, 2021), and at most two (2) of the items had been turned over to the Trustee by the date Barclay filed the *Response to the Order to Show Cause* (September 12, 2021).

169. Barclay's conduct, as described in relation to this cause of action, was intentional for purposes of assessing the appropriate remedy under Section 526(c)(5).

WHEREFORE, the UST requests the Court enter judgment against Barclay (a) imposing an appropriate civil penalty, (b) entering such injunctive relief as appropriate to prevent future violations of Section 526, up to and including prohibiting Barclay from engaging in any further practice of law before the United States Bankruptcy Court for the District of Colorado, and (c) for such other relief as the Court deems proper.

## THIRD CAUSE OF ACTION
## (VIOLATIONS OF 11 U.S.C. §§ 526(a)(1) and (a)(3))

170.     The UST hereby realleges and incorporates by this reference all preceding paragraphs.

171.     As referenced above, subsections (a)(1) and (a)(3) of Section 526 provide that a "debt relief agency" shall not:

> fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title; [or]

> misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to–(A) the services that such agency will provide to such person; or (B) the benefits and risks that may result if such person becomes a debtor in a case under this title[.]

11 U.S.C. §§ 526(a)(1) and (a)(3).

172.     The Representation Agreement that Barclay provided to the Debtors, albeit incomplete and unsigned, listed the scope of services that Barclay would provide to the Debtors as:

> preparing and filing a bankruptcy petition, attending the meeting of creditors, dealing with creditor phone calls and collection attempts, and responding to up to fifty inbound client phone calls regarding this bankruptcy case. It also includes assisting the client with any requests from the bankruptcy trustee as part of the administration of the case and working on the resolution of any issues.

(**Exhibit 2** – Representation Agreement).

173.     By failing to attend the Adjourned 341 Meeting, Barclay failed to perform a service that he informed the Debtors he would provide in connection with the case in violation of 11 U.S.C. § 526(a)(1).

174.     By failing to respond to the Trustee's requests for documents and information in relation to the case, and by failing to inform the Debtors of those requests, as well as the Turnover Order requiring their compliance with those requests, Barclay failed to perform a service that he informed the Debtors he would provide in connection with the case in violation of 11 U.S.C. § 526(a)(1) and misrepresented the services he would provide to the Debtors in violation of 11 U.S.C. § 526(a)(3).

175.     By advising the Debtors that they could proceed in Chapter 7 despite the equity in their home by making a payment agreement with the Trustee, but then failing to pursue any such payment arrangement with the Trustee after the case was filed, Barclay failed to perform a service that he informed the Debtors he would provide in connection with the case in violation of 11 U.S.C.

§ 526(a)(1), and misrepresented the services he would provide to the Debtors in violation of 11 U.S.C. § 526(a)(3).

176.    Barclay misrepresented the services he would provide to the Debtors, in violation of 11 U.S.C. § 526(a)(3), by advising them not to appear at the 341 Meeting and the Adjourned 341 Meeting, while omitting from that advice that their appearance at the 341 Meeting and Adjourned 341 Meeting was required by the Bankruptcy Code, 11 U.S.C. § 343.

177.    Barclay misrepresented the services he would provide to the Debtors, in violation of 11 U.S.C. § 526(a)(3), by advising them not to provide documents to the Trustee, while omitting from that advice that the Bankruptcy Code required the Debtors to cooperate with the Trustee, 11 U.S.C. § 521(a)(3).

178.    Barclay misrepresented the services he would provide to the Debtors, in violation of 11 U.S.C. § 526(a)(3), by advising them to purposefully fail to pay the second payment under the Installment Payments Order, while omitting from that advice that willfully failing to comply with the Installment Payments Order could result in the Debtors being barred from filing another bankruptcy case for at least 180 days, 11 U.S.C. § 109(g).

179.    Barclay's conduct, as described in relation to this cause of action, was intentional for purposes of assessing the appropriate remedy under Section 526(c)(5).

WHEREFORE, the UST requests the Court enter judgment against Barclay (a) imposing an appropriate civil penalty, (b) entering such injunctive relief as appropriate to prevent future violations of Section 526, up to and including prohibiting Barclay from engaging in any further practice of law before the United States Bankruptcy Court for the District of Colorado, and (c) for such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF 11 U.S.C. § 528)

180.    The UST hereby realleges and incorporates by this reference all preceding paragraphs.

181.    Section 528 requires any debt relief agency providing bankruptcy services to an assisted person to "execute a written contract with such assisted person that explains clearly and conspicuously (A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payment." 11 U.S.C. § 528(a)(1).

182.    The debt relief agency must execute that written agreement within five (5) business days of providing any "bankruptcy assistance" to the assisted person. 11 U.S.C. § 528(a)(1).

183.    In addition, the debt relief agency is required to provide a copy of the "fully executed and completed contract" to the debtor. 11 U.S.C. § 528(a)(2).

184.    Section 526(c)(1) provides that a contract for bankruptcy services that fails to comply with any of the material requirements of Sections 526, 527, or 528, "shall be void and may

not be enforced by any Federal or State court or by any other person, other than such assisted person." 11 U.S.C. § 526(c)(1).

185.    As discussed above, Barclay acted as a debt relief agency in relation to the Debtors' case.

186.    Barclay had provided bankruptcy assistance to the Debtors as of the consultation meeting that took place on October 12, 2020, wherein Barclay advised the Debtors about bankruptcy.

187.    Pursuant to Section 528(a)(1), Barclay was required to execute a written contract with the Debtors no later than October 17, 2020.

188.    Barclay did not provide the Debtors with a "written contract" until March 17, 2021, when he emailed the Debtors the document titled "Representation Agreement," which Barclay referred to as his "standard retainer."

189.    Barclay's failure to execute a written contract with the Debtors within five days of providing bankruptcy assistance to the Debtors violated the requirements of 11 U.S.C. § 528(a)(1).

190.    The Representation Agreement provided to the Debtors was never signed by Barclay, was never signed by the Debtors, and did not disclose the amount of fees or charges for the bankruptcy services.

191.    Barclay's failure to sign the Representation Agreement, or any other written contract, violated the requirements of 11 U.S.C. § 528(a)(1).

192.    Barclay's failure to clearly and conspicuously state the amount being charged for the bankruptcy services in an executed written contract violated the requirements of 11 U.S.C. § 528(a)(1).

193.    Barclay's failure to obtain the Debtors' signatures on the Representation Agreement, or any other written contract, violated the requirements of 11 U.S.C. § 528(a)(1).

194.    Barclay's failure to provide the Debtors with a copy of a fully executed and completed contract violated the requirements of 11 U.S.C. § 528(a)(2).

WHEREFORE, the UST requests the Court enter judgment against Barclay (a) cancelling and voiding the contractual agreement between the Debtors and Barclay (if any); and (b) such other relief as deemed proper.

### FIFTH CAUSE OF ACTION
### (VIOLATIONS OF PROFESSIONAL DUTIES AND THE NEED FOR REGULATION OF ATTORNEY MISCONDUCT IN BANKRUPTCY CASES)

195.    The UST hereby realleges and incorporates by this reference all preceding paragraphs.

196.    "Overseeing lawyers who represent bankruptcy debtors" is one of the "core and traditional role[s]" of the Bankruptcy Court. *In re Stewart*, 970 F.3d at 1258 (citing 3 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶329, at 329–34 (16th ed. 2020)). "The Court has the duty and authority to regulate the litigants that appear before it and address their improper conduct." *In re Burnett*, 2022 WL 802586, at *12 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42–43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)).

197.    "The potential for mischief to be caused by an attorney who is willing to skirt ethical obligations and procedural rules is enormous." *In re Young*, 789 F.3d 872, 879 (8th Cir. 2015). "Courts must uphold the dignity of the legal profession, and need to protect the public from any attorney misconduct." *In re Dobbs*, 535 B.R. at 698.

198.    As one court elaborated in the case of *In re Seare*:

> [L]awyers should behave with honesty and integrity. Being able to trust lawyers to protect one's property is especially important for consumer bankruptcy debtors, who typically seek representation in dire circumstances and face a complex legal process. The system is harmed where lawyers create or use false evidence or intend to deceive the court, and where the lawyer's behavior puts an unreasonable burden on the court. The profession is harmed where an attorney's practices reflect poorly on the profession or contribute to a decline in the overall quality of services provided by attorneys in a practice area or region.

*In re Seare,* 493 B.R. 158, 220 (Bankr. D. Nev. 2013), *aff'd*, 515 B.R. 599 (B.A.P. 9th Cir. 2014) (citing Am. Bar Ass'n, Joint Comm. on Prof'l Sanctions, Standards for Imposing Lawyer Sanctions 13 (2005)).

199.    Thus, as part of its oversight responsibility, the bankruptcy court must sometimes take into consideration the rules governing the professional conduct of the lawyers practicing before it. *See Parker v. Jacobs*, 466 B.R. 542, 549 (M.D. Ala.), *aff'd sub nom. In re Parker*, 485 F. App'x 989 (11th Cir. 2012); *In re Dobbs*, 535 B.R. at 689 ("[W]hen considering attorney misconduct and Rule 9011 violations, a bankruptcy court may also take into consideration the Rules of Professional Conduct of the state in which the court sits."); *In re Santos*, 616 B.R. 332, 353 (Bankr. N.D. Tex. 2020) (same); *In re Seare*, 493 B.R. at 215-216 (retainer agreement executed without compliance with the communication and consultation rules found in Nevada's rules of professional conduct violated § 528(a)).

200.    Indeed, the Local Rules of Practice of the United States District Court for the District of Colorado, Section V, provide, with exceptions not applicable here, that "the Colorado Rules of Professional Conduct (Colo. RPC) are adopted as standards of professional responsibility for the United States District Court and the United States Bankruptcy Court for the District of Colorado." D.C.Colo.L.AttnyR. 2(a). Further, Local Bankruptcy Rule 9010-1(a) provides that the "Local Rules of Practice of the United States District Court for the District of Colorado, Section V – Attorney Rules will apply" to the practice of law before the Bankruptcy Court.

201.    Moreover, bankruptcy courts have an inherent authority to regulate the practice of attorneys who appear before them and impose sanctions on those attorneys for abuses of the

bankruptcy process. *See In re Courtesy Inns Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994); *In re Yorkshire, LLC,* 540 F.3d 328, 332 (5th Cir. 2008); *In re Seare*, 515 B.R. 599, 615 (B.A.P. 9th Cir. 2014); *In re Nguyen,* 447 B.R. 268, 280 (B.A.P. 9th Cir. 2011); *In re Rainbow Magazine, Inc.,* 77 F.3d at 284–85.

202.    This inherent power allows bankruptcy courts to discipline the attorneys who appear before them, including suspending those attorneys from appearing and practicing law in their courts. *See Ex parte Wall,* 107 U.S. 265, 288, 2 S.Ct. 569, 27 L.Ed. 552 (1883) ("The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practise *[sic]* in them."); *In re Lewis*, 611 F. App'x 134, 136 (4th Cir. 2015); *In re Evergreen Sec., Ltd.,* 570 F.3d 1257, 1280 (11th Cir. 2009) (affirming bankruptcy court's five-year suspension of an attorney and his firm from practicing before the bankruptcy court); *In re Evans,* 801 F.2d 703, 706 (4th Cir.1986) ("A court has the inherent authority to disbar or suspend lawyers from practice ... derived from the lawyer's role as an officer of the court."); *In re Seare*, 515 B.R. at 615 (affirming bankruptcy court's monetary and non-monetary sanctions against attorney based, in part, on attorneys failure to comply with rules of professional conduct); *Parker v. Jacobs,* 466 B.R. at 548-50 (upholding bankruptcy court's decision to suspend attorney for repeatedly failing to remit filing fees and making other false and misleading statements to the court); *In re MPM Enters,* 231 B.R. 500, 504 (Bankr. E.D.N.Y. 1999) (finding Court had inherent power "to permanently bar an attorney from appearing in any Bankruptcy Court in the Eastern District."); *In re Ludwick,* 185 B.R. at 247 (imposing a two-year suspension for attorney who forged debtor signature); *In re Nesom,* 76 B.R. 101 (Bankr. N.D. Tex. 1987) (finding attorney subject to sanctions, including 60–day suspension, for forging debtor's signature on statement of affairs, schedules, and schedule of current income).

203.    As further set for the below, Barclay's conduct in and in relation to the Debtors' bankruptcy case violated multiple provisions of the Colorado Rules of Professional Conduct ("COLO. RPC"), including COLO. RPC 8.4, COLO. RPC 4.1, COLO. RPC 1.1, COLO. RPC 3.3, and COLO. RPC 1.4, which negatively impacted his representation of the Debtors, the efficient administration of the Debtor's case, and his duties to this Court.

*Violations of COLO. RPC 8.4*

204.    Rule 8.4 of the Colorado Rules of Professional Conduct ("COLO. RPC") provides, in pertinent part, that it is professional misconduct for a lawyer to:

    (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist
    or induce another to do so, or do so through the acts of another;

    …

    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation,
    except that a lawyer may advise, direct, or supervise others, including clients, law
    enforcement officers, and investigators, who participate in lawful investigative
    activities;

    (d) engage in conduct that is prejudicial to the administration of justice; [or]

28

…

(h) engage in any conduct that directly, intentionally, and wrongfully harms others and that adversely reflects on a lawyer's fitness to practice law[.]

COLO. RPC 8.4.

205.    As further set for the below, Barclay's conduct in and in relation to the Debtors' bankruptcy case violated and attempted to violate multiple Rules of Professional Conduct, and therefore, violated COLO. RPC 8.4(a).

206.    At a minimum, Barclay "engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation," in violation of COLO. RPC 8.4(c), by offering to pay B.C. Services to deceive the Court into dismissing the Debtors' bankruptcy case by filing a motion to dismiss, that Barclay would prepare, claiming that the Debtors had refused to give B.C. Services a copy of their tax returns.

207.    Through that same email, Barclay also engaged in conduct prejudicial to the administration of justice in violation of COLO. RPC 8.4(d).

208.    In addition, Barclay also engaged in conduct prejudicial to the administration of justice, in violation of COLO. RPC 8.4(d), by filing the First Motion to Dismiss and Second Motion to Dismiss without conducting a reasonable investigation as to whether Nicole Mennona's pay advices had actually been filed with the Court or whether she even had pay advices for the relevant periods, by representing to the Court that at least one of Nicole Mennona's pay advices had not been filed, by falsely asserting in the *Response to the Order to Show Cause* that the "Debtors have provided most of the items requested," by falsely asserting at a hearing that the Debtors had complied with all provisions of the Turnover Order other than providing the Trustee with their keys, and by failing to inform the Debtors of the Trustee's requests for documentation and the requirements of the Turnover Order.

209.    Furthermore, Barclay also engaged in conduct that "directly, intentionally, and wrongfully harms others and that adversely reflects on the lawyers fitness to practice law" in violation of COLO. RPC 8.4(h) by encouraging the Debtors to inflict an illness on the Trustee's counsel. More specifically, in his instructions to the Debtors to sign and mail the Trustee Information Sheet and Domestic Support Obligation Form to the Trustee's counsel, Barclay encouraged that: "If either of you have COVID or some other highly infectious, nasty disease – or if you know someone who does – please make sure they lick the envelope and handle it as much as possible." (**Exhibit 15 –** September 9, 2021 Email, p.1).

*Violations of COLO. RPC 4.1*

210.    Rule 4.1 of the COLO. RPC states: "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."

211.   Omissions, or partially true but misleading statements, can be the equivalent of affirmative false statements. COLO. RPC 4.1, Comment 1.

212.   By telling the Trustee at the 341 Meeting that he had tried to contact the Debtors by phone and had not been able to reach them, and by omitting from that discussion that the Debtors were willfully failing to appear at the 341 Meeting, Barclay made a false statement of material fact to the Trustee in violation of COLO. RPC 4.1.

213.   In his email proposal to B.C. Services, Barclay failed to disclose to B.C. Services the material fact that he had the Debtors' 2020 tax returns in his possession at that time and could deliver them to B.C. Services if they were requested, in violation of COLO. RPC 4.1.

214.   In an attempt to cover up the fraudulent nature of his proposal to B.C. Services, Barclay made false and baseless legal assertions to B.C. Services and the Trustee by claiming that the communications with B.C. Services were "privileged in nature and content" as a "confidential settlement offer," when in fact his clients had no dispute with B.C. Services in need of resolution, and had not authorized Barclay to present any form of settlement offer to B.C. Services. Barclay's false assertions of the facts and law violated COLO. RPC 4.1.

*Violations of COLO. RPC 1.1*

215.   Colorado Rule of Professional Conduct 1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

216.   Barclay's failure to pursue legal avenues that would obtain the Debtors' objectives (*i.e.*, obtain relief through a bankruptcy filing, while retaining their home) was a breach of his duty of competence in violation of COLO. RPC 1.1.

217.   By filing the First Motion to Dismiss without conducting a reasonable investigation into whether the pay advices that Barclay asserted as the basis for dismissal of Nicole Mennona's case had actually been filed, Barclay breached his duty of competence in violation of COLO. RPC 1.1.

218.   By representing to the Court at the August 17, 2021 hearing on the First Motion to Dismiss that at least one of Nicole Mennona's pay advices had not been filed, despite that pay advices being contained in a 6-page document Barclay had filed with the Court, and despite the Trustee pointing out that they had been filed in his Objection to the First Motion to Dismiss, Barclay breached his duty of competence in violation of COLO. RPC 1.1.

219.   By filing the Second Motion to Dismiss without conducting a reasonable investigation into the existence of the pay advices that Barclay asserted as the basis for dismissal of Nicole Mennona's case, Barclay breached his duty of competence in violation of COLO. RPC 1.1.

220.   By failing to inform the Debtors of the Trustee's repeated requests for documents and information, Barclay breached his duty of competence in violation of COLO. RPC 1.1.

221. By failing to inform the Debtors of the Turnover Order, and the deadlines for compliance with the Turnover Order, Barclay breached his duty of competence in violation of COLO. RPC 1.1.

222. By representing to the Court at the hearing on the Order to Show Cause that the Debtors had turned over certain items to the Trustee that had not been turned over to the Trustee, Barclay breached his duty of competence in violation of COLO. RPC 1.1.

*Violations of COLO. RPC 3.3*

223. Colorado Rule of Professional Conduct 3.3, titled "Candor Toward the Tribunal" prohibits, among other things, an attorney from knowingly making false statements to the Court, and from offering evidence to the Court that the attorney knows to be false. In pertinent part, COLO. RPC 3.3 states:

> A lawyer shall not knowingly … make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

224. Barclay knowingly filed the Debtors' bankruptcy case without obtaining the Debtors' signature on the bankruptcy documents, thereby disregarding the duty of candor to the Court and making a false statement of material fact in violation of COLO. RPC 3.3.

225. Barclay knowingly filed the Filing Fee Application, which included a representation that the Debtors could not pay the filing fee, without the Debtors signature, thereby disregarding the duty of candor to the Court and made a false statement of material fact in violation of COLO. RPC 3.3.

226. Barclay knowingly filed the Debtors' Schedule A/B containing a false amount for the balance of the Debtors' bank account, thereby disregarding the duty of candor to the Court and making a false statement of material fact in violation of COLO. RPC 3.3.

227. Barclay asserted in the First Motion to Dismiss that two pay advices – for April 9, 2021, and April 16, 2021 – had not been filed with the Court, and asserted the same as the basis for dismissal of Nicole Mennona's case. Despite the pay advices being contained on the docket in a 6-page document, and despite the Trustee having pointed out that all of the pay advices claimed as missing were included in that filing, Barclay continued to represent to the Court at the August 17, 2021 hearing that the pay advices had not been filed until the Court itself forced Barclay to review the filings during the hearing. By making those unfounded representations to the Court, Barclay disregarding the duty of candor to the Court and made a false statement of material fact in violation of COLO. RPC 3.3.

228. By failing to withdraw the Second Motion to Dismiss after being told by Mrs. Mennona that the pay advices asserted as the basis for dismissal did not actually exist, Barclay disregarding the duty of candor to the Court and failed to correct a knowingly false statement of material fact made to the Court in violation of COLO. RPC 3.3.

229.    By representing to the Court in his Response to the Order to Show Cause, that the "Debtors have essentially complied with the Court's order for turnover, though admit some items are missing," Barclay knowingly made a false statement of material fact in violation of COLO. RPC 3.3. Indeed, as Barclay later admitted in the Stipulated Facts, of the eight (8) items the Debtors were required to turn over to the Trustee pursuant to the Turnover Order, at most two (2) of those items – the Debtors' identification cards, and the CMA – had been turned over to the Trustee on the date he filed that pleading.

230.    By representing to the Court at the hearing on the Order to Show Cause that the Debtors had turned over certain items to the Trustee that had not been turned over to the Trustee, Barclay knowingly made a false statement of material fact in violation of COLO. RPC 3.3.

*Violations of COLO. RPC 1.4*

231.    The UST hereby realleges and incorporates by this reference all preceding paragraphs.

232.    Colorado Rule of Professional Conduct 1.4 states:

(a) A lawyer shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

> (3) keep the client reasonably informed about the status of the matter;

> (4) promptly comply with reasonable requests for information; and

> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

233.    Barclay violated COLO. RPC 1.4(a)(1) by failing to obtain the Debtors' informed consent regarding the proposal he made to B.C. Services, which would have bound the Debtors to pay B.C. Services "anything owed to BC Services in full and compensate BC Services for its time and cooperation in this process."

234.    Barclay violated COLO. RPC 1.4(a)(2) by failing to reasonably consult with the Debtors regarding the means by which he was attempting to accomplish their objectives, including, but not limited to, by failing to inform the Debtors of the offer to B.C. Services to engage in a fraudulent scheme to obtain dismissal of the Debtors' case.

32

235.    Barclay violated COLO. RPC 1.4(a)(3) and COLO. RPC 1.4(b) by failing to keep the Debtors reasonably informed about the status of the case, including, but not limited to, by failing to inform the Debtors of the Trustee's requests for documents and information, and by failing to timely inform the Debtors of the requirements of the Turnover Order, and by allowing the Debtors to be sanctioned for failing to comply with the Trustee's requests and the Turnover Order.

236.    Barclay violated COLO. RPC 1.4(a)(4) by failing to comply with the Trustee's reasonable requests for documents and information throughout the case.

237.    Barclay violated COLO. RPC 1.4(b) by advising the Debtors to purposefully fail to pay the second payment for the filing fee under the Installment Payments Order, while omitting from that advice that, pursuant to 11 U.S.C. § 109(g), dismal of the case as a result of their willful failing to comply with the Installment Payments Order could cause them to be barred from filing another bankruptcy case for at least 180 days.

WHEREFORE, the UST requests the Court enter judgment against Barclay (a) prohibiting Barclay from engaging in the practice of law before the United States Bankruptcy Court for the District of Colorado for such time as the Court deems appropriate, (b) if the Court deems appropriate, referring this matter to the Disciplinary Panel or Committee on Conduct of the United States District Court for the District of Colorado pursuant to L.B.R. 9010-1(d), and (c) for such other relief as the Court deems appropriate.

## V. PRAYER FOR RELIEF

238.    The UST hereby realleges and incorporates by this reference all preceding paragraphs.

239.    This Court's authority to impose remedies for attorney misconduct in a bankruptcy case (or cases) is derived from multiple sources, including: (1) 11 U.S.C. §§ 526(c); (2) 11 U.S.C. § 105; (3) Fed. R. Bankr. P. 9011; (4) the Local Bankruptcy Rules; and (4) the inherent authority of federal courts.

240.    Following from the assertions set forth herein, the UST requests the Court enter judgment against Barclay, affording the following relief:

a.  cancelling and voiding the contractual agreement (if any) between the Debtors and Barclay;

b.  imposing sanctions, fines, and penalties against Barclay as appropriate under 11 U.S.C. §§ 105, 526-528, and Fed. R. Bankr. P. 9011;

c.  entering such injunctive relief as appropriate to prevent future violations of Section 526;

d. prohibiting Barclay from engaging in the practice of law before the United States Bankruptcy Court for the District of Colorado for such period of time as the Court deems appropriate;

e. if the Court deems appropriate, referring this matter to the Disciplinary Panel or Committee on Conduct of the United States District Court for the District of Colorado pursuant to L.B.R. 9010-1(d); and

f. such other relief as deemed proper.

WHEREFORE, the UST requests the Court enter judgment against Barclay (a) cancelling and voiding the contractual agreement between the Debtors and Barclay (if any); (b) imposing sanctions, fines, and penalties against Barclay as appropriate under 11 U.S.C. §§ 105, 526-528, and Fed. R. Bankr. P. 9011; (c) entering such injunctive relief as appropriate to prevent future violations of Section 526; (d) prohibiting Barclay from engaging in any further practice of law before the United States Bankruptcy Court for the District of Colorado for such period of time as the Court deems appropriate; (e) if the Court deems appropriate, referring this matter to the Disciplinary Panel or Committee on Conduct of the United States District Court for the District of Colorado pursuant to L.B.R. 9010-1(d); and (f) for such other relief as the Court deems proper.

Dated: April 21, 2022.                    Respectfully submitted,

PATRICK S. LAYNG
UNITED STATES TRUSTEE

/s/ R. Samuel Boughner
By: R. Samuel Boughner, AR#2010272
Trial Attorney for the U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, CO  80294
(303) 312-7252
(303) 312-7259 fax
Samuel.Boughner@usdoj.gov